AMERICAN DIAMOND ROCK BORING COMPANY *v.* SHELDON and others.

*(Circuit Court, D. Vermont.* February, 1880.)

PATENT—MOTION FOR REHEARING.—The granting of a motion for a rehearing after a decree for an injunction and account, upon the infringement of a patent, rests in the sound discretion of the judges who heard the cause.

SAME — ARTICLES MADE BEFORE AND SOLD AFTER EXPIRATION OF PATENT.—Articles illegally manufactured during the life of a patent cannot lawfully be sold after the expiration of the same.

In Equity.

WHEELER, J. A motion for a rehearing has been filed since the decree for an injunction and an account, in support of which counsel for the defendants have submitted a brief; and a motion to restore the injunction as to machines made during the life of the patent infringing upon it has been heard. The motion for rehearing rests entirely upon the ground that the decision made is, as is alleged, for many reasons erroneous, and is supported by the certificate of two counsel.

The English practice of granting a rehearing upon the certificate of two counsel, as a matter of course, does not prevail in the federal courts of this country. *Brown* v. *Aspden,* 14 How. 25; *U. S.* v. *Wright's Adm'r,* 1 Black, 489; *Public Schools* v. *Walker,* 9 Wall. 603. According to the present practice in this court the granting such motion rests in the sound discretion of the judges who have heard the cause or made the decision. This seems to be the general practice in the circuit courts of the United States. *Daniels* v. *Mitchell,* 1 Story, 198; *Jenkins* v. *Eldridge,* 3 Story, 299. This is all that is claimed by counsel for the defendants.

The brief has been carefully examined, and it presents scarcely anything not before presented by counsel, and fully considered. The validity of the reissued patent was established by Judge Shipman, upon substantially the same record in the southern district of New York. *Am. Diam. Rock Boring Co.* v. *Sullivan Machine Co.* 14 Blatchf. 119. That decision was followed and concurred in in this case, and the decision in that respect could not be changed in this case without overruling that as well as the one in this case. The only other questions are those relating to infringement and to the effect of the New Hampshire decree. The question of infringement by the means held to be an infringement in this case was not determined by Judge Shipman in either case before him. It was merely postponed to final hearing; so that question was fully open. It was very carefully considered, and nothing new is presented in regard to it.

It seems to be understood or assumed that the patent has been held to cover a conical boring head, but that is not correct. It has been merely held that filling into the center to make a conical head to bore by the same means as the annular head infringes the patent for the annular head, although it may be, and probably is, an improvement upon the annular head. And likewise in regard to filling out the stock even with the laterally projecting diamonds.

And there is nothing new about the New Hampshire decree. The fact remains that the causes of action there were different from those here, so they had not passed under judgment. And the issue here is not shown to have been actually decided by the court there, for nothing was decided there relating to the merits of either case.

It is urged that the plaintiff does not proceed to an accounting under the decree, so that the defendants can appeal. This motion, however, was filed before there was any time for such accounting, and its pendency may have thus far prevented. Whether it has or not, that is no ground for a rehearing, although it might become a ground for dismissing the bill for want of prosecution. On the whole, it is quite apparent that a rehearing, under the rules, would not, with

any reasonable degree of probability, change the result, but would only delay this and other causes, and add to the expense of the parties.

The patent was granted under the acts of congress of 1836 and 1861, and carried the full and exclusive right and liberty of making, using, and vending to others to be used, the patented invention, during the term of the patent. Act of 1836, § 5. The defendants have machines made during the term of the patent, and which were infringements when made. If they could be made then and used now, in defiance of the owner of the patent, the exclusive right granted would not be fully enjoyed. The grant of the exclusive right is substantially the same in this country as it is in England. The question raised here arose there in *Crossley* v. *Derby Gas-Light Co.* Webst. Pat. Cas. 119. The case is more fully reported in 4 Law Jour. N. S. Chan. 25. There the patent would expire on the ninth of December, 1829; and on the twenty-eighth of November, before a bill was filed praying for an injunction against using infringing machines and for an account, the vice chancellor granted the injunction, and directed the account, and the defendants appealed.

After argument, the lord chancellor, Lyndhurst, said: "This is an appeal from his honor, the vice chancellor, and is a case for an injunction against the invasion of a patent-right by preventing the use of certain gas-meters. This case is very peculiar, and is distinguishable from all other cases in the books. It appears that the plaintiff obtained his patent on the ninth of December, 1815, and that on the twenty-eighth of November, 1829, only a few days before the patent expired, he filed a bill. It was objected that the court would not interfere, just on the eve of the expiration of the patent, and grant an injunction which would only last a week. The point has never yet been decided; but I am of opinion that the court would interfere, after a patent had expired, to restrain the sale of articles manufactured previous to its expiration in infringement of a patent-right, and that a party would not be allowed to prepare for the expiration of a pat-

ent by illegally manufacturing articles, and immediately after its expiration to deluge the markets with the products of his piracy, and thus reaping the reward of his improbous labor in making it. The court would, I say, in such case restrain him from selling them, even after the expiration of the patent." This doctrine does not appear to have been denied or questioned afterwards, and was frequently carried out, in effect, by decreeing the destruction of infringing machines. *Betts* v. *De Vitre*, 34 Law Jour. Ch. 289; *Needham* v. *Oxley*, 11 Weekly Rep. 852.

In Curtis on Pat. § 436, it is laid down as clear law that, "if the patent has expired, the account and the injunction will extend to all the articles piratically made during the existence of the patent, though some of them. may remain unsold." The illegality attaches to the things themselves. The person making them has no right to make them—no right to them when made; he can import none, and none will accrue by their passing into time when they might be made. The ordinary injunction in such cases, in effect, restrains all infringement of the patent, and is, in form, perpetual. It would, doubtless, cover an illegal sale or use after the expiration of the patent. In this case the ordinary injunction has been suspended in the course of proceedings to limit the term of the patent, and there is, therefore, no injunction now in force.

The motion for rehearing is denied, and the injunction restored as to machines made in infringement of the patent.