## MACBETH–EVANS GLASS CO. v. L. E. SMITH GLASS CO.

(Circuit Court of Appeals, Third Circuit.   October 13, 1922.   Rehearing Denied
December 4, 1922.)

### No. 2805.

1. **Patents ☞328—1,342,744, for lens for headlight, held to involve invention.**

    The Evans patent, No. 1,342,744, for a headlight lens, consisting in combination of an upper visor, coated to reflect the light backward, and a lower portion, with horizontal refracting ridges on its outer surface, and alternating vertical concave recesses or corrugations on its inner surface, which elements were first united by the patentee, *held* to involve invention.

2. **Patents ☞26(2)—Elements of combination must conjointly produce new and useful result.**

    The several elements in a patentable combination must conjointly produce a new and useful result, to which every one of the several elements acting, according to its own mode of operation, contributes.

3. **Patents ☞36—Sales held to show remarkable commercial success.**

    As bearing on the question of invention, the sale by the maker of the highest priced headlight lens on the market of 17 per cent. of all headlight modifying devices, though there were 22 devices on the market meeting all requirements of stringent laws, and 55 meeting the requirements of less stringent laws, was evidence of remarkable commercial success.

4. **Patents ☞36—Commercial success is weighty fact in determining question of invention.**

    While commercial success may be due to many causes, and may not indicate invention, it is an important and weighty fact, entitled to serious consideration.

5. **Patents ☞26(2)—Combination of old elements, first made by patentee after years of study and experimentation, held to involve invention.**

    Where, after years of study, work, and experimentation of many skilled illuminating engineers, a patentee was the first to combine old elements, conjointly producing a new and useful result in an integral headlight lens, which at once gained great commercial success, invention exists.

    Woolley, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Suit by the Macbeth-Evans Glass Company against the L. E. Smith Glass Company.   From a decree for defendant, plaintiff appeals.   Reversed, with directions.

Winter & Brown, of Pittsburgh, Pa. (Edward Rector, of Chicago, Ill., and Frederick W. Winter and Paul N. Critchlow, both of Pittsburgh, Pa., of counsel), for appellant.

William O. Belt, of Chicago, Ill., and Arthur O. Fording, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.   This is an appeal from a decree of the District Court holding United States letters patent No. 1,342,744 "invalid for want of invention."

[1] The invention relates to lenses for headlights used on automobiles and other vehicles, for the purpose of bending the light, emanat-

ing from a parabolic lamp casing, downward, and of diffusing it laterally, so as to reduce the glare in the eyes of persons approaching, and better illuminate the road and its sides. This result is accomplished by means of an integrally formed cover glass or lens comprising a lower portion of clear glass, which has horizontal prisms on the outer surface, vertical cylinders on the inner surface, and an upper portion, forming a protruding vizor, substantially opaque. The horizontal prisms on the outer lower surface of the lens have their front faces inclined at a slight angle to the vertical, and serve to refract the light downward, thus giving greater illumination on the road, and preventing the objectionable glare from striking the eyes of approaching persons.

The vertical cylinders, resembling a series of slightly concave corrugations, on the lower inner surface diffuse the light laterally, and thus further prevent the glare and illuminate the road. The vizor serves a twofold purpose: It, being substantially opaque, prevents the light from passing through it, except just enough to give a pleasing appearance, and, being green on the outside and covered on the inside with white enamel, reflects the light which strikes it from the source of illumination backwardly upon the main reflector, which in turn sends it outwardly for road illumination. In this way the wasted and objectionable rays of light which ordinarily pass through the upper part of an automobile lens are saved and used for road illumination. These three separate optical elements, combined for the first time in one headlight, for road illumination, are old. The question for our determination is whether or not they have been united into a patentable combination, in view of the prior art.

The patents, No. 28,187, issued to Salsbury (British) December 24, 1908; No. 949,503, issued to Schuler February 15, 1910; No. 1,119,848, issued to Macbeth December 8, 1914—show a lens for automobiles with horizontal prisms, which bend the rays of light downward and save, as Schuler says, the heretofore "wasted" and "useless" light. The patent No. 973,729, issued to George Wamhoff on October 25, 1910, discloses a lens for automobiles having intermediate vertical convex cylinders, on each side of which are sections of ground glass. The rear faces of this lens are flat and the front faces convex. This lens, though in form unlike the Macbeth-Evans lens, in function is similar and will diffuse the light laterally. The patentee says that it "will enable a greater spreading and diffusion of light from the lamp and through the same than the ordinary glasses or lenses generally employed." The patent No. 1,211,447, issued January 9, 1917, to Houze shows a concavo-convex lens with vertical parallel corrugations which diffuse the light laterally. This patent disclosed that light rays may be diffused uniformly both laterally and vertically by placing two corrugated lenses together in one lamp; the corrugations in one being vertical and in the other horizontal. The patent No. 637,145, issued to Moffat and Dobbins November 14, 1899, shows a lens with a series of "parallel prism bars" on one face, and upon the other face a series of shallow "lens bars, disposed substantially at a right angle in respect to the prism bars, these lens bars presenting outer convex faces." Refraction and diffusion are accomplished by this lens.

There are a number of patents disclosing devices for lanterns and lamps generally, which prevent glare of light and at the same time save the intercepted rays of light and throw them back upon reflectors, which in turn direct them to places where they are needed and utilized. The patents to Thomas, No. 597,307, issued January 11, 1898, and to Egnell, No. 657,693, issued September 11, 1900, illustrate this class. The vizor type for automobiles, more closely resembling the Macbeth-Evans patent, is represented by the British patent, No. 2,316, issued to Lucas November 10, 1904, and the United States patent, No. 1,244,556, issued to Slonaker October 30, 1917. It was the object of Lucas to eliminate "the dazzling glare of the light" by which "much inconvenience is occasioned to drivers of horse vehicles and others." In this device the front of the lamp was formed from a single disc or piece of glass, the lower portion of which was clearly transparent and the upper portion translucent. The glass in this patent was oval or flat. The protruding vizor resembling that in the patent in issue was first represented in Slonaker's device. The glass in the lower portion is transparent, and the upper vizor portion is made translucent by sand-blasting, etching, painting, or other well-known means, as was the glass in the device of the Lucas patent. In the center of the lens is a circular disc, called a bull's eye.

The function, however, of the Slonaker vizor performs in part only that of the Macbeth-Evans vizor. The sole function of the Slonaker vizor was to diffuse rays of light passing through it and prevent glare. The function is thus described by the patentee: The vizor is rendered translucent by sand-blasting, "thus causing the light transmitted through to be diffused, and preventing the free transmission of those forwardly and upwardly directed rays of light which in the ordinary form of clear glass lamps prove so objectionable to pedestrians and others approaching or approached by the lights." The function of the "green vizor" was not only to prevent glare, but also to save and utilize the hitherto wasted and objectionable light. The saving and subsequent use of the light theretofore wasted did not occur to Slonaker.

It is indisputable that Evans was the first to combine these three elements of his patent in one lens: (1) The vizor, having an outer coat of substantially opaque green enamel for pleasing appearance, and an inner coat of white enamel to reflect light backward; (2) the outer surface of the lower portion of the lens having horizontal refracting ridges, with their faces inclined at a slight angle to the vertical to refract rays of light downwardly and (3) the inner surface having alternating vertical concave recesses or corrugations to diffuse light laterally. There is no question about the fact that Evans was the first to unite these three desirable elements into one integral lens. No other person had combined the three elements in any kind of lens, integral or otherwise. Whether or not this union reached the height of invention or remained on the plane of mere mechanical skill is the real question in this case.

[2] The law, drawing the dividing line between invention and mechanical skill, has been declared many times and is entirely clear, but the correct application of the law to the facts in a particular case is often difficult, and is a fertile field for difference of opinion. The several

elements in a patentable combination must conjointly produce a new and useful result. To this result every one of the several elements, acting according to its own mode of operation, contributes. This court, in defining a patentable combination, said:

"In doing its appointed share towards effecting the single result achieved by the co-operation of all, each element acts, of course, according to the law of its own being; but, of necessity so acting, it is still, none the less, combined with the others, and does 'qualify' each and all of them (not their distinctive method of operation), in the sense that each is, by the co-operation of the others, capacitated to contribute, by acting in its own peculiar way, to the common end which, without the co-operation of each and every other of the co-ordinated elements, it would be powerless to accomplish or advance." National Cash Register v. American Cash Register, 53 Fed. 367, 3 C. C. A. 559; Blake v. Robertson, 94 U. S. 729, 24 L. Ed. 245; Lock Co. v. Sargent, 117 U. S. 536, 6 Sup. Ct. 934, 29 L. Ed. 954; Dayton Malleable Iron Co v. Forster, Waterbury & Co. (C. C.) 153 Fed. 201; International Mausoleum Co. v. Sievert et al., 213 Fed. 225, 29 C. C. A. 569; New York Scaffolding v. Whitney, 224 Fed. 452, 140 C. C. A. 138.

Does the Evans patent meet this test? Do the three elements, combined for the first time by him conjointly, produce a new and useful result? It seems to us that they do. The rays of light, conserved by the vizor, sent back upon the reflector, and in turn reflected through the lower portion of the lens for road illumination, are diffused laterally by the vertical cylinders and refracted downwardly by the horizontal prisms. In fact, all the light reflected through the lens is both diffused laterally by the cylinders and refracted downwardly by the prisms. In the field of illumination there is not a mere aggregate of several results, each the complete result of one of the combined elements; but, as the testimony shows and as we observed in the demonstration at the hearing, there is a single, unitary whole, the result of the combined operation of all the elements—a result never before produced in any combination. Did the production of this result amount to invention or mere mechanical skill?

The Macbeth-Evans Glass Company had been engaged for more than fifty years in making all kinds of glass for illumination, for lamp chimneys, lantern globes, lights for railroad systems, signal glass, switch lamps, semaphores, lantern globes for signaling, lights for ships, signal lights, searchlights for battleships, and lenses for lighthouses. Some time prior to 1909 the company began experimenting with automobile lenses, and the problem before it and before the automobile world was the production of a good light, properly distributed, with the elimination of glare. In June of 1909 Harry S. Hower, Professor of Physics and head of the Department of Physics of the Carnegie Institute of Technology, was Director of Research for the Macbeth-Evans Glass Company. From that time on, with the assistance of from one to five "expert illuminating engineers" and qualified lens designers, he was engaged in and connected with the development of one lens after another until the lens of the Evans patent was produced. It appears, therefore, that the Evans lens was not obvious to the ordinary mechanic skilled in road illumination, but was the result of years of study and work by experts in optical road illumination and lens designing.

[3, 4] No attempt was made to show that the Evans lens did not solve the problem of road illumination—at least, that it was not superior to any prior lens. With the exception of a few lenses ground and polished by hand, the Evans or "green vizor lens," as it is called, is the highest priced lens on the market. Notwithstanding that fact, from July, 1917, to January, 1921, 2½ years, 650,000 pairs were sold, 17 per cent. of all headlight modifying devices. When it is remembered that there were 22 devices on the market meeting all the requirements of stringent state laws and 55 meeting the requirements of less stringent laws, the sale of 17 per cent. by the one costing the most is evidence of remarkable commercial success. The testimony shows that the success of this lens was because it met a real need. Commercial success may be due to many causes, and may not indicate invention, but it is an important and weighty fact, entitled to serious consideration. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Barbed Wire Patent Case, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034.

The problem, which seems difficult, and which the world, interested in the art, tried hard and long to solve, when solved, seems simple, and the wonder is that it was not solved before. The Supreme Court, in the case of Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527, said:

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention."

In the case of Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, that court, in commenting on the contention, that the combination of Webster was a mere aggregation, which would appear to any mechanic skilled in the art, said:

"But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit."

[5] These quotations might very appropriately have been addressed to the contention in the case at bar that the combination of the "green vizor lens" was a mere aggregation, obvious to any mechanic skilled in the art. With the advent of motor vehicles, and with their great increase in number and utility, proper road illumination, with the elimination of glare, became a very important problem. After years of study, work, and experimentation of many skilled illuminating engineers, Evans was the first to combine the three old elements, which conjointly produce a new and useful result in an integral lens which at once gained great commercial success. We are of opinion that the combination involved invention and was patentable.

The decree of the District Court dismissing the bill is reversed, with

directions to reinstate the bill and enter a decree in accordance with this opinion.

WOOLLEY, Circuit Judge (dissenting). I have trouble in finding invention in the lens of the patent. The thing the patentee did, when stated in simple terms, was this: In a plain lens of an automobile lamp he cut transverse horizontal refracting ridges, thus employing a well known expedient of the optical art for deflecting rays of light. For this (in conjunction with mechanism not here involved) he was granted Letters Patent No. 1,119,848, issued December 8, 1914. In this lens, some time later, he cut sections of vertical cylinders, again employing a well known expedient of the art for spreading rays laterally. Letters Patent No. 973,729 to Wamhoff, 1910. This lens, cut horizontally and vertically to direct rays downwardly and laterally, appeared on the market under the name of "Liberty Lens." For some reason it was, and still is, marked as if made under Letters Patent of December 8, 1914, though in fact but one of these two optical features is covered by that patent.

Just when this double-cut lens was first made and put on sale is not clear. It is certain, however, that it was made before the date of the application for the patent in suit because the patentee there included it in his diagrams, specification and claims. Later, for a reason not given, he cancelled the claims on this construction and withdrew the diagrams. With the Liberty Lens in existence on the date of the application for the patent in suit, what next did the patentee do? Having found in the art a lens shade in the form of a vizor—the invention of Slonaker (Letters Patent No. 1,244,556, 1917), which was but a step beyond the invention of Dalman (Letters Patent No. 1,001,733, 1911)—all he did was to place a Slonaker vizor on a Liberty Lens. Did this involve invention? I think not. But the plaintiff urges that in the lens of the patent in suit the three elements—horizontal prisms, vertical cylinders, and a shade—appeared in combination for the first time and produced a new result. Even so, I cannot discover invention. One element—horizontal prisms—was old. Another—vertical cylinders—was old. But the vital thing is that the combination of horizontal prisms and vertical cylinders also was old—old in the window prism art from which it was taken, Letters Patent No. 637,145, to Moffat and Dobbins (1899), Daylight Glass Mfg. Co. v. American Prismatic Light Co. (C. C.) 140 Fed. 174; Daylight Glass Mfg. Co. v. American Prismatic Light Co., 142 Fed. 454, 73 C. C. A. 570; Pressed Prism Plate Glass Co. v. Continuous Glass Press Co. (C. C.) 150 Fed. 355; Pressed Prism Plate Glass Co. v. Continuous Glass Press Co. (C. C.) 181 Fed. 151; and not new in the automobile lamp art, having been described in the application for the patent in suit, claimed and withdrawn. Whether these two elements in combination involve invention when transferred from the window of a house to the window of a lamp is not here in issue. However that may be, this old combination of optical expedients produced all the ray changes of the lens of the patent in suit except a negligible percentage made by the Slonaker vizor when painted as Slonaker had taught the art. The patentee made

free use of Slonaker's invention and his teaching. In placing the Slonaker lens shade on his own double-cut lens, I find the patentee made no more of an invention than if he had borrowed a lamp shade from a neighbor and placed it on his own student lamp. I am constrained to dissent from the judgment of the court.