### GROSS v. FRANK.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1923.)

No. 2034.

1. **Patents ⊜⊸328—No. 1,380,058, claim 3, for automobile parking light, held valid.**

Gross patent, No. 1,380,058, claim 3, for a parking light for automobiles, *held* valid.

2. **Patents ⊜⊸9—Improvements of old devices patentable when new and useful and involving invention.**

Claims presenting something new and useful in the art, and involving inventive genius, are patentable, though in a sense they may constitute improvements on old or former devices.

3. **Patents ⊜⊸45—Doubts solved in favor of validity.**

Where a patented article becomes on account of its utility a commercial success, and there is great and immediate demand for it, any doubts as to patentable novelty should be solved in favor of validity of the patent.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in equity by Angus R. Gross against Joseph Frank. From a decree (278 Fed. 846) dismissing plaintiff's bill, he appeals. Reversed and remanded, with directions.

Arthur E. Dowell, of Washington, D. C. (Alexander & Dowell, of Washington, D. C., on the brief), for appellant.

Cyrus W. Beale, of Richmond, Va. (Williams & Mullen, of Richmond, Va., on the brief), for appellee.

Before WOODS and WADDILL, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge. This case involves the validity of claim 3 of patent No. 1,380,058, dated May 31, 1921, granted to the appellant, Gross, for a parking light for automobiles.

The appellant, hereinafter called the plaintiff, on the 4th day of August, 1920, filed his application to have issued to him a patent for certain new and useful improvements in parking lights for automobiles, claimed to have been invented by him. The patent was duly granted, claim 3, the subject of the litigation, being an amendment and enlargement of claims 1 and 2 of the petition for patent. The District Court decided that, while the infringement on the part of the appellee, hereinafter called the defendant, of the plaintiff's alleged patent was clear, the patent itself was invalid for want of novelty, and accordingly dis-

missed the plaintiff's bill, from which the appeal in this case was taken. The assignments of error present this single question for the consideration of the court. The District Court held that, while there is no question that a high order of inventive genius may be shown in combining old things so as to produce new results, there must be a real patentable combination of them, as distinguished from a mere aggregation of such elements; in a word, that the court's view was there was not only lack of novelty in the plaintiff's claim, but also that it did not contain such real combination of old elements as to produce new and useful results.

After giving to the case the fullest consideration, we find ourselves unable to agree with the trial court in either of the positions taken. Claim 3 of the patent in suit is as follows:

"(3) In a parking light, a tubular supporting member having its upper end formed with a bayonet slot for engagement with the pin of a lamp shank and having an integral exterior supporting flange adapted to rest upon the top of the fender; means for clamping the flange to a fender; a small T-shaped casing comprising a cylindrical body open at its opposite ends and a depending tubular T portion adapted to telescope over the upper end of the tubular supporting member above the flange; multi-faceted lenses secured in and projecting beyond each end of the casing; a socket screw for fastening the T portion of the casing to the upper end of the socket member, the outer end of said screw being substantially flush with the exterior of the part in which it is threaded, an insulating block fixedly secured in the lower end of the tubular supporting member; and means in said block for making electrical contact with the contacts in the shank of a lamp when the latter is inserted in the upper end of the socket member, the parts being so proportioned that the lamp is approximately in axial alinement with both lenses, substantially as described."

Plaintiff, describing the advantages of such a light over prior lights, which the proof fully sustains, says of it:

"The size and strength and simplicity of construction, the ease with which the bulb can be renewed, the large light it gave and the way it was fastened to the fender, the substantial method of being attached to the fender, made it stay there, and could not be vibrated loose. * * * The features of this heavily set screw that could be used to remove the top very easily was that the bulb could be removed. After it is renewed, you simply put the top on and tighten up the screw, and you can align it, without any trouble, fore and aft, with the car. It is very substantially installed on the fender by the use of a large nut, and in our advertising we guarantee that the light will outlast the car, where the old light used to last anywhere from three to six months."

He further states that in his light the jewels are made of glass, and are—

"Slipped in and the metal spun over the edge of the jewel, which makes it very strong and permanent. You have to break the jewel in order to get it out. The projections here and the facets on each side throw the rays of the light sideways as well as forward, making it very big."

The plaintiff further described the method of attaching his light as:

"By simply loosening the set screws it goes through and connects with the supporting members, slips the top right off, and you remove the bulb and put the top back on and tighten up your set screws and wind it up in the position it ought to be, and tighten it up good and solid, and it is permanent there. In installing them you bore a hole through the fender, and slip this down through, and put the nut up underneath and clamp it tight."

It is not shown in the record that any prior light had been produced with a small metal T-shaped body and projecting faceted lenses in each end thereof, as in the case of the plaintiff's light. This was the essentially novel feature of the plaintiff's invention, and what made his light a success was the small T-shaped casing with the projecting multi-faceted lenses in each end thereof. No one had previously conceived this idea, and used a lense with multi-faceted lenses on such a casing for the purpose desired, with the result that the projections and the facets on each side threw the rays of the light sideways as well as forward, greatly magnifying the size of the light. This was a real contribution to the prior art, was novel in character, calling for inventive genius, and had not theretofore been anticipated.

[1] If we are correct in the view stated as to the novelty and utility of the plaintiff's invention, and as to which we think there can be no doubt, it suffices to establish plaintiff's claim to the validity of his patent.

Treating, however, the case as one of patentable combination, based upon the alleged improvement of old devices theretofore existing, so as to produce new, useful, and valuable results, we think there can be little doubt of the validity of the patent, and that it embodies the necessary requisites to sustain such patent, taking into account the success attained and the benefit accomplished from such combination. This would entitle it to validity alone as an advance in the art.

The subject of this patent is in a sense an article of manufacture, and it cannot be said that the effectiveness of the light is not greatly improved, as well in its size as in its simplicity, the lessening of the cost, and the neatness and appearance of it, and that every one of the parts, used and adopted by the plaintiff has been found to be necessary and useful in reducing it to a small, simple device which would embody a smaller number of parts. The lenses were put in, in the location as claimed, to accomplish the very purpose of increasing the size of the light over those of the larger lamp which it seems to have displaced. Thus the otherwise merely ornamental jewel lenses were adapted to new purposes, namely, for better disseminating the light from a smaller lamp. The plaintiff's patent was for improvement on patents theretofore existing, not for something entirely new in itself, and hence it involved necessarily dealing with what had theretofore gone before. But this in no manner detracts from the validity of the plaintiff's claim if it develops that what he has procured by way of enlargement and improvement and development of the art in the previous stages is something shown to be an advance in the science, and novel, useful, and valuable, and confers a real benefit. The record shows that the lamp described in the patent, when offered for sale, met with immediate commercial success, because in many respects it had practical advantages over other lamps of a similar character previously on the market. Primarily the popularity of this lamp results from its size, attractive appearance, durability, and the amount of light radiated. Because of its smaller size, it can be placed, without danger of injury, on the fender of an automobile, where it is most effective as indicating the position of the vehicle by unobstructedly projecting light rays fore and aft. More-

over, it is so made as to allow the removal and introduction of electric bulbs when necessary by the manipulation of a small number of parts without deranging the other parts of the lamp, and simple means are provided for securing it to the fender.

[2] The real inquiry in a case like the present is whether the proposed claim presents something new and useful in the art, and involves inventive genius. If so, such claims are patentable, although in a sense they may constitute improvements on old or former devices. The advance in the science, the improvement in the art, the making of something useful and beneficial out of something theretofore crude and inoperative, however much the original model may appear to be like the perfected design, is at least what the public is interested in, and is what the monopoly of the patent is granted for, to the end that the real advantage of benefits secured may become the property of the public, at the expiration of the patent period. Such, it seems to the court, is the character of the lamp in the patent in suit, and that, as respects the claim in issue, something of value has been added to the state of the art, valuable and useful in the purposes for which it was designed, resulting in much economy and greater illuminating power, and which had not been anticipated by others in the prior art. Many authorities might be cited to sustain this view, and reference is especially made to the comparatively recent case of Diamond Rubber Co. v. Consul Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527. The able and interesting opinion of Judge McKenna in this case is quite conclusive of the present controversy. Other federal authorities may be cited, viz.: Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Strong v. Noble, 6 Blatch. 477, Fed. Cas. No. 13,543; O'Rourke Engineering Co. v. McMullen, 160 Fed. 933, 88 C. C. A. 115; National Tube Co. v. Aiken, 163 Fed. 254, 91 C. C. A. 114; Wright Automatic Co., etc., v. American Tobacco Co. (D. C.) 220 Fed. 163, 166, 167; H. D. Smith & Co. v. Peck, Stow & Wilcox (C. C. A.) 262 Fed. 415, 417; Macbeth-Evans Glass Co. v. Smith Glass Co. (C. C. A.) 284 Fed. 193, 197—which will also be found of interest, and to fully support the court's conclusion as herein announced.

Counsel for the defendant has ably presented the defense's view of this case, and also cited quite an array of authority in support thereof, which, however, need not be reviewed herein, further than to say that the same have been fully considered, and do not, from our view, militate against the conclusions hereinbefore announced, which we think are fully upheld by the cases hereinbefore cited.

[3] We can but feel in this case, having regard to the favorable presumption of patentability arising from the issuance of the patent itself, that, even if there were doubt, which we do not think there is, as to patentable novelty, taking into account its commercial utility, as testified to by the great and immediate demand for the patented article, such doubt should be solved in favor of the validity of the patent. Topliff v. Topliff and Others, 145 U. S. 156, 164, 12 Sup. Ct. 825, 36 L. Ed. 658; Barry v. Harpoon Castor Mfg. Co., 209 Fed. 207, 210, 126 C. C. A. 301; H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C.

A.) 262 Fed. 415, 417, supra; Eibel Process Co. v. Minnesota, etc. (D. C.) 267 Fed. 847, 854; Macbeth-Evans Glass Co. v. Smith Glass Co., supra (C. C. A.) 284 Fed. 193, 197.

The decree of the District Court will be reversed, and the cause remanded thereto, with directions to grant the injunction prayed for, and to take such steps as to the assessment of damages for infringement as may be deemed necessary.

Reversed.