### BARRY et al. v. HARPOON CASTOR MFG. CO.

(Circuit Court of Appeals, Second Circuit. November 11, 1913.)

#### No. 55.

PATENTS (§ 328*)—VALIDITY AND INVENTION—FURNITURE TIP.

The Alleyn patent, No. 995,758, for an anti-friction tip for furniture to take the place of castors, consisting of a convex disk of heavy metal plate with an upturned strengthening rim provided with prongs to be driven into the bottom of chair legs, etc., was not anticipated by similar shaped nail heads and other devices of the prior art, most of which were used for different purposes, and discloses invention, especially shown by its commercial success, due to its simplicity, cheapness, and utility; also *held* infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Charles D. Barry, Frederick W. Lincoln, and John R. Bradlee, copartners trading under the name of Henry W. Peabody & Co., against the Harpoon Castor Manufacturing Company. Decree for defendant, and complainants appeal. Reversed.

For opinion below, see 201 Fed. 686.

On appeal from a decree of the United States District Court for the Southern District of New York, holding invalid letters patent No. 995,758 granted June 20, 1911, to Henry M. Alleyn for an "anti-friction tip for furniture," and assigned to the complainants. The bill was dismissed with costs.

Frederic W. Hinrichs and Alfred E. Hinrichs, both of New York City, for appellants.

Charles S. Champion, of New York City, and Henry N. Paul, Jr., and Joseph C. Fraley, both of Philadelphia, Pa., for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The patent in controversy is for an exceedingly simple anti-friction device designed to take the place of castors previously used on the legs of tables, chairs and other similar pieces of furniture.

The object of the inventor was to provide a cheap anti-friction bearing device which can be readily and securely attached to any piece of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

furniture and permits it to slide easily over the surface of a rug, carpet or floor. The tip consists of a drawn sheet metal disk having a smooth, polished, convex surface and an upturned strengthening rim provided with a plurality of integral pointed prongs, adapted to be driven into the leg, or like support, of the piece of furniture in question. The disk, at its perimeter, is bent to form a strengthening rim upon which the leg of the chair or table rests after the prongs have been driven into position by three or four blows of a hammer. The rim tends to prevent the blows from fracturing or distorting the continuously curved convex surface of the device. The tips must be made of extremely stiff metal so that there will be no flattening, bending or malformation when they are driven into place by any ordinary hammer. They are much cheaper than the castors in use at the date of the invention, they can be quickly applied by any one having sense enough to drive a nail and they permit the moving of the article of furniture in any direction without injuring the carpet, rug or floor on which it rests. The tips are invisible after being applied and do not perceptibly increase the height of the furniture to which they are attached. The patent has a single claim which sufficiently describes the invention and renders further description thereof unnecessary. It is as follows:

"In an article of manufacture, a tip for supporting wooden chairs and the like, adapted for contact with a support therefor, consisting of a continuously curved convex portion of smooth sheet metal having an upturned rim continuously connected to said convex portion around its perimeter, and prongs of said sheet metal integral with said rim, projecting substantially in the plane thereof at the point of attachment, and adapted to be driven by the blows of a hammer into the wood of the article to be supported, said convex portion, rim and prongs, having a resisting power to the blows of said hammer sufficient to substantially prevent the flattening or breaking thereof, whereby said tips may be attached without malformation or fracture."

The main attack upon the Alleyn patent is based upon the proposition that if the defendant has succeeded in proving that the Alleyn tip is found in the prior art, though in different environment, and applied to entirely different uses, the patent is anticipated or rendered invalid for lack of invention.

The prior art shows similar constructions but none of them capable of being used as a castor for furniture. Similar devices, though smaller, lighter and with a much more pronounced "dome," were used as "spots" or ornaments for Mexican saddles, harness and other like purposes. Coffin nails were similarly constructed and "spots" were used on the bottom of traveling bags to keep them from being soiled when set down upon a wet or dirty station platform. None of these things could be used to do the work of the "Domes of Silence," by which euphonic but somewhat ambitious name the owners of the Alleyn patent designate their product. No one ever attempted, prior to Alleyn, to use such a structure as a substitute for castors. Of course, in making this statement, we do not overlook the "Thonet Furniture Tip," which consisted of a nail with a smooth round head and a long central shaft adapted to be driven into the legs of the chair or table like an ordinary large headed nail. This device was never commercially successful and if, as the defendant contends, it be equally

serviceable as that of the patent in suit the question at once arises, why does not the defendant use it? The fact that the defendant persists in using the Alleyn device and is willing to take the very serious risk of being adjudged an infringer is persuasive testimony of the advantages of the "Domes of Silence" over the Thonet big headed nails.

The record is largely devoted to the attempt to establish the proposition that in view of the saddle and harness ornaments and the coffin nails of the prior art there could be no invention in adapting these devices as substitutes for castors. We think, in view of the hard metal, the short prongs, the strengthening rim and the depressed contour of the dome of the Alleyn tips, invention can be found even if the ornamental devices of the prior art were used as substitutes for castors. But they were not so used and their adaptation for use as castors required the exercise of inventive skill. In order to test the question let us assume that the exact structure shown in the patent to Alleyn was taken from the shield of a Scottish Highlander or the war bonnet of a North American Indian 300 years ago and was on exhibition in some museum here. Would it not involve invention to put it to use as a substitute for the elaborate, clumsy and expensive castors now in use? We think it would. In Consolidated Co. v. Littauer Co., 84 Fed. 164, 28 C. C. A. 133, this court held that it required invention to produce in a glove fastener a depressed "dome" or support. In Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294, the Supreme Court sustained a patent for a telegraph key where the new feature was the substitution of a tortional spring for the trunnions or pivots upon which the lever vibrates. In Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586, the Supreme Court sustained a patent for a machine for attaching stays to the corners of boxes in the same manner that the work had previously been done by hand. In Krementz v. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, the court sustained a patent for a collar button for the reason that the skilled mechanic with his attention specially drawn to the subject, had failed to see, what Krementz afterwards saw, that a button might be made of one continuous sheet of metal, of an improved shape, of increased strength, requiring less material and entirely dispensing with solder. In the Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, the court upheld a patent for a twisted fence wire having the barb "bent at its middle portion about one of the wire wire strands and clamped in position and place by the other wire strand twisted upon its fellow."

In each of these cases the invention was based upon the finding of a new use or function for structures found in the prior art. Domes, tortional springs, stays for box corners, pasting machines, collar buttons and barbs for fence wires were all old, but those who found a new place for the old devices whereby alone, or in combination with other structures, entirely new results were produced, received the rewards of the inventor. We think, therefore, that even if it be assumed that the "Domes of Silence" were found in the prior art, as coffin nails or ornaments, that it required an exercise of the inventive faculty to use them as substitutes for castors. It is most unsafe to refuse to rec-

ognize invention because the device or combination is simple, for such a rule would destroy some of the most meritorious patents ever issued. The device in question is exceedingly simple, it is a hard metal cylindrical dome with smooth exterior and prongs extending from the encircling rim adapted to be driven into hard wood by the blows of an ordinary hammer. Attempts along similar lines have been made, but they were all failures. A possible exception may be made of Thonet's large headed nail, but, as we have seen, his device was not commercially successful and has, apparently, gone out of use. It requires no expert knowledge to perceive that his long shaft might split a slender chair leg and, unless driven with great care and precision, that the periphery of the large head might rest unevenly upon the wood.

Alleyn, in our judgment, has made a meritorious invention, he has done what no other worker in the art succeeded in accomplishing. He has produced a castor which departs radically from the old lines. It has no disks like Thonet's with a single central shaft, no swivels, no wheels, no glass bearing surface, no screws, no nails, no metal sockets, no elaborate machinery of any kind. Chair legs no longer split, screws no longer drop out, and the services of the cabinet maker are no longer needed. All this is accomplished by a simple hard metal disk with a re-enforcing rim and prongs which can be driven in place by the most inexperienced person. The device is almost negligible as to cost and never breaks down or wears out. We cannot resist the conclusion that to accomplish this result required invention. If additional evidence were needed of the popularity and immediate success of Alleyn's invisible castors it is found in the immediate and phenomenal success which attended them. The counsel for the complainant estimates that in the two years prior to October, 1911, the combined sales of the complainant and defendant aggregated 40,000,000 pieces. Such immediate and extensive popularity would, in a doubtful case, be sufficient to turn the scales in favor of invention.

The decree is reversed with costs and the cause is remanded to the District Court with instruction to enter a decree sustaining the Alleyn patent and granting an injunction and an accounting.