### H. D. SMITH & CO. v. PECK, STOW & WILCOX CO.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

#### No. 81.

1. PATENTS ⬦328—FOR SCREWDRIVER VALID AND INFRINGED.

The Ward patent, No. 737,179, for a screwdriver, *held* not anticipated by prior patents or structures of the prior art, and to disclose invention; also *held* infringed.

2. PATENTS ⬦35—COMMERCIAL SUCCESS MAY BE CONSIDERED ON QUESTION OF INVENTION.

Whether a patented structure involves invention is a question of fact, and the determining factor is not whether the achievement was difficult or easy, but whether it has in point of fact given the world something of value that it did not have, and upon that question great commercial success may be considered in its favor.

3. PATENTS ⬦56—ANTICIPATION NOT SHOWN BY POSSIBILITY OF MODIFICATION OF PRIOR DEVICE TO ACCOMPLISH SIMILAR FUNCTIONS.

It is not sufficient to constitute anticipation that the device relied on might, by modification, be made to accomplish the function of the patented article; but it must be designed by the maker and adapted for the performance of such function.

4. PATENTS ⬦328—DESIGN PATENT FOR SCREWDRIVER INVALID.

The Ward design patent, No. 37,214, for a design for a screwdriver, *held* invalid, as relating to a subject-matter not an appropriate subject for a design patent.

Appeal from the District Court of the United States for the District of Connecticut.

Suit in equity by H. D. Smith & Co. against the Peck, Stow & Wilcox Company. Decree for complainant, and defendant appeals. Modified and affirmed.

For opinion below, see 258 Fed. 40.

H. E. Hart, of Hartford, Conn., for appellant.

Archibald Cox, of New York City, and Henry E. Rockwell, of New Haven, Conn., for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellee now owns, by assignment, letters patent No. 737,179, granted August 25, 1903, for a screwdriver, and design letters patent No. 37,214, of November 8, 1904, for a design for the screwdriver. Both were issued to William S. Ward. The mechanical patent was considered by this court in an action wherein the present appellee was plaintiff and the Southington Manufacturing Company was defendant. 247 Fed. 342, 159 C. C. A. 436. In

that case, however, the plaintiff agreed, by stipulation, that the patent was valid, and therefore did not contest its validity for want of invention. The defenses offered in that litigation were noninfringement and invalidity because of anticipation. It was held there that there was nothing in the prior art like the combination of this article, to wit, the screwdriver, and the defendant failed on both of its defenses, to wit, the noninfringement and anticipation because of the prior art.

[1] In this case, the appellant is not bound by such an admission, and therefore the question of whether or not the patent discloses invention is open to it. It has also offered in evidence patents which were not in the case of Smith v. Southington Mfg. Co., and which it contends establishes anticipation because of prior date. Likewise the defense is interposed that evidence of prior use establishes anticipation. There is a denial of infringement of the patent by use of the structure which the appellee says infringes its patent.

The District Judge held that, in view of the result in this court in the case of Smith v. Southington Mfg. Co., supra, it was not incumbent upon him to do more than examine such patents offered in the prior art as were not considered by this court, and such new evidence as amplified or added to the claim of anticipation due to prior use. In this we think the learned District Judge was correct. The mechanical patent provides for a new make of screwdriver. Screwdrivers have existed for a long time, but in this invention we believe that the inventor gave to the world a new and better screwdriver than it has had, and thus has moved the art forward. It consists of a combination of a particular structure and a particular shape. It consists of integral solid drop forging beginning at the top of an oval, but having a flat hammer face, and continuing into a flat handle web, into which scales of an elliptical shape gradually decreasing in width are riveted, continuing into a conical tapering bolster, continuing into a round shaft, ending up in a flat blade; the handle portion being elliptical in the cross-section for the most part, but gradually merging with the conical bolster by a gentle taper into a circular tool shank, thus providing a firm grasp, while facilitating a nice control by pressure of the finger and thumb upon the shank of the tool. There has been created for it a very substantial and large demand. It commands a high price for such a tool in the market. Its shape and handles provide for turning the tool on its elliptical axis.

Two important characteristics stand out as necessary for successful use by operators: (1) It should be of such a character that the blade may be inserted in the kerf of the screw as easily and certainly as possible; and (2) provide for the application of as much power as possible to turn it. Hand power is applied, and the hand grip must be attained by the shape upon which the hand rests and obtains control of the tool, and is brought to bear in the turning operation. The combination must have such structural strength as to meet increased strains occasioned by the increased control and turning power. The structure provided by this integral solid drop forging provides for wooden hand scales so shaped as to provide the foregoing characteristic. The shape

can be seen plainly by the eye and felt by the hand. In the lower part of the handle, the elliptical cross-section merges with an abrupt break into a circular cross-section, and the two then decrease in diameter until there is a comparatively small circular cross-section and then continuing down becomes still smaller and then flattens out as a blade.

[2] Whether the structure involves invention is a question of fact, and the determining factor is not whether the achievement is difficult or easy, but whether it has, in point of fact, given the world something of real value, that it did not have—a benefit conferred upon mankind. O'Rourke Engineering Const. Co. v. McMullen et al., 160 Fed. 933, 88 C. C. A. 115.

This court, upon the appeal in the other litigation, considered it very useful, and pointed out that a considerable demand had arisen for it. The record here shows that 4,700,000 of these screwdrivers have been sold at a price of at least 10 per cent. higher than the next highest priced screwdriver. This willingness of the purchasing public to pay is a practical demonstration of its substantial value. The appellant's conduct in copying the structure and shape of the appellee's structure is a strong indication that it, too, appreciates the value of this advance in the art. We conclude that the combination constitutes invention, and that the patent is valid.

We shall consider the various patents in this record which were not considered in the case of Smith & Co. v. Southington Mfg. Co., 247 Fed. 342, 159 C. C. A. 436. In that case, the defendant introduced the same three table knife patents, No. 78,328, issued May 26, 1868, to Moses Rubel, No. 86,252, issued January 26, 1869, to Moses Rubel, and No. 172,874, issued February 1, 1876, to James D. Frary; the screwdriver patent, No. 267,709, issued November 21, 1892, to Philip Nadig; three wrench patents, No. 553,059, issued January 14, 1896, to Robert C. Ellrich, No. 666,029, issued January 15, 1901, to Amos Sheppard, and design No. 34,136, issued February 26, 1901, to William S. Ward; and all were held not to anticipate the patent in suit. We adhere to the conclusion there announced. In addition to the foregoing patents, this appellant has offered and introduced three other patents, one to Franz Lehman, No. 96,928, issued November 16, 1869, for a horseshoer's hoof parer, one to Munson, No. 104,056, issued June 7, 1870, relating to rubber-coated carriage trimmings, and one to Conklin, No. 128,020, issued June 18, 1872, for an ice pick and meat maul. The ice pick is made of a single piece of cast metal, with handle scales attached. The carriage trimmings tool consists of a piece of metal covered with rubber, and the hoof parer of a curved piece of metal with a curved knife fastened to one end, and two pieces of horn riveted to either side. They have neither the structure nor the shape of the patent in suit. It is plain that none of these prior patents could provide for the patented screwdriver without modification of the things shown in the patent.

[3] It is not sufficient to constitute anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question. It must be designed by the maker

and adapted for the performance of such function. Topliff v. Topliff & Co., 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. The prior wrench patents to Ellrich (No. 553,059) and Sheppard (No. 666,029) do not show or suggest any part of the shape of the patented screwdriver, except only at one end of the six mentioned parts. They do not disclose or suggest either the butt at one end or any of the shape below the handle portion, where the elliptical cross-section gradually merges into a round cross-section, nor the continued contracted diameter through the conical bolster into the circular tool shank. They lack half the combination of the article, because, if a blade is formed on the end of one of these wrenches, the device still lacks the shape, and they cannot be declared an anticipation. We shall consider the design patent to Ward later.

The tools made pursuant to the prior patents were not screwdrivers, and do not suggest the idea in their construction of being at all adapted to a tool utility by turning on its longitudinal axis. To adapt these old devices to this new function would require modification or changes, and therefore they do not anticipate. Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586; Barry v. Harpoon Castor Mfg. Co., 209 Fed. 207, 126 C. C. A. 301.

The improvised tools used by employés of both in their factory and at their homes were simply wrench bars and were not anticipations. They had not become established facts, accessible to the public, in contributing definitely to the advance of the art. They had not taken their place as part of the known established art, to which the public may at any time resort. Ajax Metal Co. v. Brady Brass Co. (C. C.) 155 Fed. 409. These tools do not suggest or show the merging of the elliptical cross-section into the circular cross-section, or the portion of the tool below that. To prove anticipation by an unpatented device, if attempted by oral testimony, the existence and use must be proven by clear, satisfactory proof and beyond a reasonable doubt. The Barbed Wire Patents, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154. We find nothing in the prior use of the various tools, which have been offered in evidence and been considered, which warrants our concluding, beyond a reasonable doubt, that the appellee's patented structure has been anticipated by such use.

The proof of infringement is ample. The appellant's screwdriver is so near in structure and shape to the appellee's screwdriver that we are convinced of its infringement.

[4] The appellee has sued upon both patents in this action. This it may properly do. Eclipse Mach. Co. v. Harley-Davidson Motor Co. (D. C.) 244 Fed. 463. To successfully establish the validity of the design patent, and to entitle the inventor to protection, he must establish a result obtained, which indicates, not only that the design is new, but that it is beautiful and attractive. It must involve something more than mere mechanical skill. There must be invention of design. The District Judge concluded that the screwdriver is beautiful and attractive, and he says, even ornamental. We cannot, however, agree that the appellee's structure, made pursuant to this patent, has such a pleasing effect imparted to the eye as to create beauty or attractiveness,

or to make it ornamental. It provides for a new utility. Design patents refer to appearance. Their object is to encourage works of art and decorations which appeal to the æsthetic emotions—to the beautiful. We do not think that the device constructed by the appellee has a subject-matter for such beauty and attractiveness as is contemplated by the statutes, which permit the Patent Office to grant design patents, and conclude that the learned District Judge erroneously sustained this patent.

We therefore modify the decree by affirming the result reached by the District Judge as to the letters patent, No. 737,179, granted August 25, 1903, and reverse the decree as to design letters patent, No. 37,214.

The decree below is thus modified and affirmed.