## CINCINNATI MILLING MACH. CO. v. OAKLEY MACH. TOOL CO. et al.

(District Court, S. D. Ohio, W. D. September 28, 1920.)

1. **Patents ⏄328—1,075,285, for cutter-setting dial, held valid and infringed.**
   The De Leeuw patent, No. 1,075,285, for a cutter-setting dial, *held* valid and not anticipated; also infringed.

2. **Patents ⏄27(2)—Placing ordinary scale of graduations in new place on machine held invention.**
   Plaintiff had for a long time manufactured a cutter grinder with different scales of graduation on different places on the machine, to adjust adjustable parts for different angles of grinding. *Held*, that its patent for placing an ordinary scale of graduations upon part of the machine, namely, the spindle, to which it had never been applied, to adjust the parts for the proper grinding angle, was not void for lack of invention, on the ground that the ordinary scale of graduations had previously been used in all kinds of places, on all kinds of instruments, for the placing of graduations on the spindle introduced a new element into the combination by making the spindle perform a new function; that is, made it an instrument of measurement.

3. **Patents ⏄27(1)—Adoption of common expedients in making new use may be invention.**
   The mere adoption of common expedients in adapting an existing machine to a new use is nevertheless invention, where the thought of the adaptation is new.

   268 F.—17

**4. Patents ⟨⟩328—1,071,634, for tooth rest, held not infringed.**
    Tooth rest patent of De Leeuw, No. 1,071,634, *held* not infringed.

In Equity. Suit by the Cincinnati Milling Machine Company against the Oakley Machine Tool Company and others. Decree for plaintiff.

Albert F. Nathan, of New York City, for plaintiff.
Wood & Wood, of Cincinnati, Ohio, for defendants.

PECK, District Judge. The patents in suit have to do with devices used in the sharpening, by grinding, of those cylindrical metal-cutting tools known as milling cutters.

[1] 1. *The De Leeuw Patent, No. 1,075,285, for a Cutter Setting Dial.*—In the machine to which this patent relates, the essential elements are a grinding wheel and a spindle head for holding the tool to be ground, mutually adjustable with relation to each other, so as to bring the grinding wheel to act upon the edge of the tooth at the desired angle. The machine is also equipped with an adjustable arm, bearing what is known as a tooth rest, upon the end of which the tooth is supported while ground. It is highly important that the proper angle be given to the cutting edge of the tooth. This is known as the clearance angle. Prior to De Leeuw's invention, the method of getting this angle was by adjusting the respective elevations of the grindstone and the edge to be ground. In order to do this with accuracy, the manufacturers published tables showing the various angles of clearance that would result from various elevations, respectively. These tables necessarily had to cover the range of the various diameters of grinding wheels and cutters to be ground and of the angles of clearance to be obtained. They were complex, incomplete, difficult of usage, and in practice necessarily produced certain minor errors. The result was that the operators of machines were apt to disregard them and rely upon experience and the eye.

[2] De Leeuw solved this difficulty by the realization that the arc through which the edge is rotated from the plane of the cutter's axis will measure the angle of clearance imparted by the grindstone to that edge, provided the grindstone cuts in a vertical plane. He also realized that the grindstone always cuts on a line tangent to its circumference at the point of contact, and that, if that point is in the horizontal plane of the grindstone's axis, it will cut at right angles thereto; that is to say, vertically. His method was therefore to bring the edge into the plane of the axis of the milling cutter, rotate it the desired number of degrees, and bring the grindstone to it in such a way that the point of contact would be in the horizontal plane of the grindstone's axis. In using what is known as a cup wheel, the last movement was unnecessary, because the cup wheel always cuts vertically. To utilize this mathematical formula, it was essential that there should be means for measuring the arc of rotation of the cutter. That he supplied by putting graduations upon the spindle and an indicating mark on the housing adjacent thereto. The gist of his patent is this scale of graduations upon the spindle, in combination with the other features of the machine. All of those other features are old, except that the tooth rest in the new

device has a greater range of adjustability than any theretofore used. The result of placing these graduations upon the spindle was to enable the operator to utilize De Leeuw's formula, and to set the cutter to be ground at any desired angle, easily, accurately, and without reference to charts or tables, but by simply turning the spindle the number of degrees desired for the clearance angle.

It is insisted by defendants that in placing graduations upon the spindle there was no invention. It seems clear that the graduations introduced a new element into the combination; that is to say, an instrument of measurement. The spindle performed a new function; it not only held one end of the cutter as theretofore, but it measured the arc of the cutter's rotation. This new measuring function of the spindle enabled the operator to use the machine in a manner theretofore impossible, and produced a new and highly useful result. The adding of the graduations was not the mere expected skill of the calling. The best proof of this is that, although the machine had been upon the market for some 30 years, during which a simple and accurate means of setting to given angles had been highly to be desired, and in which time there had been some groping toward it (particularly in the device of Chase, hereafter to be mentioned), and although the machine had been operated by many presumably highly skilled in their calling, the result had never theretofore been attained.

[3] It is also urged by defendants that placing the graduations upon the spindle was a mere duplication of parts. There were, it is true, upon the old machine four other rotary adjustments, each of which was provided with graduations. The head spindle itself had two other rotary motions, one upon a vertical axis, and the other upon a horizontal axis transverse to that of the spindle. Both of these were provided with graduations which could be, and were, used, prior to De Leeuw's invention, for obtaining clearance angles in grinding a straight tool; that is to say, an end edged tool. Although the purpose of these graduations was, in a measure, kindred to that of those added by De Leeuw, yet they could not be made to perform the same function; that is, to obtain the clearance angle of the tooth edge of a cylindrical cutting tool. The defendant cites to this point Houser v. Starr, 203 Fed. 264, 272, 121 C. C. A. 462, 470 (C. C. A. 6). It is there said:

"The fact that no one had before combined all these features, which fact, while not controlling, is often persuasive to show invention, cannot prevail against a clear case of the mere adoption of common expedients in adapting an existing machine to a new use, and in a case where the thought of adaptation is not new."

The last clause of the sentence quoted seems to exclude the present case. Here the adaptation contemplated was the measurement of the arc of the cutter's rotation. The thought of the utility of such measurement, and of the result obtainable thereby, was new. The graduations were introduced to serve this new adaptation. Therein lay the invention. The mere placing of the graduations upon the spindle would have been well within the expected skill of the ordinary operator of this machine, had the idea of their adaptation entered his mind. Bullock Electric Mfg. Co. v. General Electric Co. (C. C. A. 6) 149 Fed. 409, at page 420, 79 C. C. A. 229, recognizes the same rule.

Had it been possible to find the clearance angle for a milling cutter by use of the graduations on the transverse axis of the old spindle head, the subsequent placing of additional graduations for the same purpose upon the longitudinal axis would have been within the rule that mere duplication is not invention. But such was not the case. De Leeuw gave to the art a machine capable of doing what no grinder for milling cutters had ever done. He did this by solving a mathematical problem and adding the necessary instrument of measurement to the machine to enable the operator to use his solution. That he used an existing part as the basis of his instrument of measurement enhanced the value of his achievement. This was invention, and he was entitled to the reward of a patent for it.

It is argued, also by defendants, that De Leeuw's invention was anticipated by various publications and devices. Chase's instrument, a description of which was published in the American Machinist of April, 1903, was an attempt toward the simplification of the task of setting a milling cutter in the grinder at the correct angle. With reference to grinding with the cup wheel he did measure the arc of rotation of the cutter, but he did not do it by graduations on the spindle. He used the cumbersome method of temporarily mounting a beam on the axis of the spindle and measuring the arc of rotation of the beam at a distance from the axis equal to the radius of the cutter to be ground, and setting the tooth rest at the point so found. This measurement he made by setting up a scale at the end of the beam. His method was clumsy compared to De Leeuw's, and resulted in a certain slight error, because the tooth rest would not, in practice, occupy the actual position determined for it, but had to be moved to get it out of the way of the grindstone. With reference to disc-wheel grinding, Chase's method did not measure the arc of rotation of the cutter at all. At this point Chase departed from that essential of De Leeuw's method, viz. grinding always in a vertical plane. He resorted to the expedient of measuring off the necessary arc of rotation upon the circumference of the grindstone and grinding at a point below the plane of its horizontal axis. Chase's work only serves to illustrate the complete darkness of the prior art as to the simple method introduced by De Leeuw.

The closest to an anticipation shown by the evidence is the work of one Irvin Newsome, then a machinist, upon one of plaintiff's old grinders in a factory at Madison, Wis. He operated entirely with the cup wheel, and observed that, having once obtained the correct clearance angle for a certain tool, he could again give to it, or to another like tool, the same setting in the machine by rotating it through the same distance. To enable himself to do this he made half a dozen marks upon the spindle and a starting mark upon the housing. His marks did not represent degrees, or any other standard system of measurement, but simply the amounts of rotation he had theretofore given other tools to produce the result. He worked at the machine during part of the year 1910, and during this period made and used his marks. He showed his employer what he had done, and asked to have the spindle taken off and graduations regularly milled upon it. His employer did not do so. When Newsome ceased to work upon the machine during

the year aforesaid, the matter was dropped. Apparently no one else used, or was able to read, his marks; and he himself, at the date of the trial, had forgotten what angles they represented, and stated that he would now be unable to make use of them. This was not an instance of public use so far persisted in as to become an established fact, accessible to the public or contributing definitely to the sum of knowledge; nor was it complete and capable of producing the result which De Leeuw produced, because Newsome's scale was not graduated, in the accurate sense of the term. Gayler et al. v. Wilder, 10 How. 477, 13 L. Ed. 504; Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821; Walker on Patents, sec. 71.

The Conradson patent cited by defendant shows no graduations adapted to finding the degree of clearance in grinding a cylindrical cutting tool, although it does show graduations adapted for finding such angle with reference to a straight or end edged tool. It is therefore no nearer to the patent in question than was the very machine which the patentee improved.

No evidence is found in the record of a true anticipation. It is therefore held that the De Leeuw patent aforesaid is valid.

The defendant's device has a graduated ring upon the spindle-head housing adjacent to the spindle, not fixed, but movable, but which necessarily must remain stationary during the measurement of the arc. The indicating mark is upon the spindle. Thus the position of graduations and indicating mark upon spindle and spindle housing, respectively, as found in the plaintiff's device, are reversed in the device of the defendant. Neither this reversing nor the placing of the graduations upon the movable ring is sufficient to avoid infringement. No one before De Leeuw provided graduations upon the parts constituting the spindle-head combination for measuring the rotation of the spindle, and the patent awarded him is entitled to a construction sufficiently broad to protect his invention as described in the claims. Accordingly the patent is held to be infringed by the defendant's device.

[4] 2. *As to the Tooth Rest Patent of De Leeuw, No. 1,071,634:* It is necessary, after the position of the cutting edge has been determined by means of the graduations above referred to, that the tooth should be there supported by an arm or bracket known as a tooth rest. The cutter must, however, be free to rotate upon its axis between the spindles, in one direction, so as to bring the next tooth to position at the grinding wheel. Prior to the patent in question support for the tooth allowing such movement was furnished by mounting upon an arm a blade of sufficient flexibility to permit the passage of the tooth during the necessary rotation. This flexible blade was usually held in a shank carried by a slotted arm bolted to the table of the machine, and always had certain range of adjustability. The plaintiff's tooth rest is described as "universal"—that is, adjustable to any position, being provided with two adjustable arms, as well as the tooth rest proper, and its shank. The adjustable feature of the arm was anticipated in the former art, and extending the range of adjustability as shown was within the ordinary skill of any competent mechanic.

As to the tooth rest proper, the patentee abandoned the flexible

blade and made his tooth-supporting member of what is known as "clapper-box" construction, viz. a rigid blade pivoted to the end of the arm, spring-pressed, provided with a stop to retain it in position. Defendant's device, so far as the universally adjustable arm is concerned, is identical with that of the plaintiff. Defendant, however, did not adopt the clapper-box construction for the tooth rest proper, but, with certain modification, adhered to the ancient method of using a flexible blade. Defendant makes his blade thin near its base and flexible at that point only, instead of throughout, or near its tip, and incases the whole in a metal tube, the inner surface of which acts as a stop. The rigidity of the tooth rest, which De Leeuw secured by the clapper-box construction defendant secures by making the upper portion of the blade stiff and nonyielding. In his specification De Leeuw says:

"The tooth rest proposed by this invention is a considerable departure from the principles heretofore utilized in such devices; that is to say, instead of employing a flexible blade having its shank rigidly fastened to the supporting arm or member, this invention utilizes a rigid blade having a pivotal mount on the arm and resiliently spring-pressed into a normal relation therewith whereby it may yield to permit of the passage of a tooth."

The defendant's tooth rest is very accurately described by so much of the above language as refers to the prior art, from which the inventor claimed to depart, and consequently the defendant's tooth rest cannot be an infringement of the aforesaid patent within any construction that could fairly be placed upon it. The patent itself shows little or nothing not theretofore known; but, as it is now held to be not infringed, it is not necessary to pass upon its validity.

3. It is claimed that the defendants have been guilty of acts amounting to unfair competition, for which increased damages should be awarded to the complainant. Ludwigs v. Payson Mfg. Co., 206 Fed. 60, 124 C. C. A. 194. It is, however, not found that they have been shown to be guilty of conduct warranting such assessment.

The usual decree may be taken in accordance herewith for injunction and an accounting.