### LINCOLN et al. v. WATERBURY BUTTON CO. (INTERNATIONAL SUPPLY CO., Intervener).

(District Court, D. Connecticut. August 3, 1923.)

### No. 1644.

1. Patents ⚖➡328—995,758, for furniture tip, held not infringed; "rim."

The Alleyn patent, No. 995,758, for anti-friction tip for furniture, consisting of convex portion and upturned rim connected thereto, and prongs integral with the rim projecting therefrom, *held* not infringed by device having no other "rim" than the edge of the convex disc.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Rim.]

2. Patents ⚖➡238—No infringement, when essential element omitted.

If essential element of patented device is absent in defendant's device, there is no infringement.

3. Patents ⚖➡314—When question of infringement one of law stated.

When extrinsic evidence is not needed to explain terms of the art or apply the descriptions to the subject-matter, and one is able from comparison and study of claim of patent to comprehend what the invention

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is, and whether defendant's device contains all the elements thereof, the question of infringement or noninfringement is one of law.

4. Patents ⟨⟨⟩⟩168(2)—Patentee cannot claim form of device rejected and canceled.

Where claims originally contained in patent application were rejected in view of prior art, and they and corresponding drawings and descriptions were canceled by the applicant, he cannot claim that patent covers form of device thereby eliminated and deliberately dedicated to the public.

In Equity. Suit by Frederick W. Lincoln and others against the Waterbury Button Company, in which the International Supply Company intervened. On motions by plaintiff and intervener for temporary injunctions, and on motion by plaintiff to strike out counterclaim, and by intervener to dismiss the bill. Bill dismissed, and other motions denied.

Cooper, Kerr & Dunham, of New York City, for plaintiffs.
Harold G. Manning, of Waterbury, Conn., for defendant.
Ellis Spear, Jr., of Boston, Mass., for intervener.

THOMAS, District Judge. Four motions are here for consideration. The plaintiffs ask for a temporary injunction against both the defendant and the intervener; they also move to strike out the counterclaim filed by the intervener on the ground that the intervener cannot inject in this suit an issue for equitable relief, which could not have been presented by the defendant, the button company, and because the counterclaim is not germane to the issue raised by the bill and answer.

The intervener moves (1) to dismiss the bill on the ground that the bill, answer, counterclaim, affidavits, and exhibits on file show that the single claim of the patent is clearly and obviously limited, so as not to be infringed by the device manufactured by the defendant and sold by the intervener, and on the further ground that the plaintiffs are estopped from asserting any interpretation of the claim on which infringement could be predicated, and because the suit was not filed in good faith and is contrary to equity; and (2) for a preliminary injunction restraining the plaintiffs from interfering with the defendant's business or its relations with its manufacturers, and annoying or harassing the trade and the intervener's customers and manufacturers with threats of infringement, suits all in conformity with the prayer contained in the answer and counterclaim of the intervener.

On account of the unique device of the patent in suit, as well as the defendant's device, the plaintiffs' motion for a preliminary injunction will be considered first, as the conclusion to be reached respecting the question of infringement must necessarily, to a considerable extent, be determinative of all these motions, as well as the whole controversy.

[1] All of the motions now before the court, while in detail involving different propositions of law, are centered about one main question. Does or does not the device manufactured by the defendant and sold by the intervener infringe the claim of the patent in suit?

This is the usual patent suit, brought for infringement of letters patent No. 995,758, granted to Henry Matthew Alleyn on June 20, 1911, on an application filed December 30, 1908, for "anti-friction tip for

furniture or the like," the title to which vests in the plaintiff copartnership.

The patent is a very simple one, and has been held valid by the Circuit Court of Appeals for the Second Circuit in Barry et al. v. Harpoon Castor Mfg. Co., 209 Fed. 207, 126 C. C. A. 301, and the device of the defendant therein, which contained an upturned rim, was held to be an infringement. The objects of the invention of the patent in suit, and a good description thereof, are set forth in the opinion of Judge Coxe in the Barry Case, supra, beginning on page 207, 126 C. C. A. 301. He said:

"The patent in controversy is for an exceedingly simple anti-friction device designed to take the place of castors previously used on the legs of tables, chairs, and other similar pieces of furniture. The object of the inventor was to provide a cheap anti-friction bearing device which can be readily and securely attached to any piece of furniture and permits it to slide easily over the surface of a rug, carpet, or floor. The tip consists of a drawn sheet metal disc having a smooth, polished, convex surface and an upturned strengthening rim provided with a plurality of integral pointed prongs, adapted to be driven into the leg, or like support, of the piece of furniture in question. The disk, at its perimeter, is bent to form a strengthening rim, upon which the leg of the chair or table rests after the prongs have been driven into position by three or four blows of a hammer. The rim tends to prevent the blows from fracturing or distorting the continuously curved convex surface of the device. The tips must be made of extremely stiff metal, so that there will be no flattening, bending, or malformation when they are driven into place by an ordinary hammer. They are much cheaper than the castors in use at the date of the invention, they can be quickly applied by any one having sense enough to drive a nail, and they permit the moving of the article of furniture in any direction without injuring the carpet, rug, or floor on which it rests. The tips are invisible after being applied, and do not perceptibly increase the height of the furniture to which they are attached."

The patent has a single claim, which describes the invention, which was secured only after a long prosecution through the Patent Office and with the greatest difficulty, as the file wrapper and its contents disclose. The claim calls for the following elements:

(1) A continuously curved convex portion of smooth sheet metal, having (2) an upturned rim, (3) continuously connected to said convex portion around its perimeter, and (4) prongs of said sheet metal integral with said rim, (5) projecting in the plane of the rim at the point of attachment, and (6) said convex portion, rim, and prongs having resisting power to the blows of a hammer sufficient to substantially prevent the flattening or breaking thereof.

The plaintiff contends that the slides of the defendant and intervener, which are identified by the trade-mark "Kasterslides," have a continuously curved convex portion of smooth sheet metal, the curved portion of which terminates in an upturned rim, with prongs integral with the upturned rim and extending upwardly therefrom, and that this construction is an infringement. They say that the prongs are adapted to be driven by the blows of a hammer into the legs of tables and chairs, that the curved convex portion and rim of the device of the defendant and intervener have a resisting power to the blows of the hammer sufficient to prevent flattening or breaking, and that when the prongs are

driven into the furniture the rim is forced into contact with the wood on the end of the leg of the table or chair.

On the other·hand, the intervener says that its "Kasterslides" consist of a sheet metal disc of uniform curvature from its center to its periphery; that directly from the periphery spring the fastening prongs, without any intermediate portion of any sort whatever, and its device completely avoids the second element described in the claim of the patent in suit, which calls for an "upturned rim," and which is further described in the specification in lines 19 and 20 as an "upturned strengthening rim," and in line 35 as a "strengthening rim." In line 47 the patentee says "the strengthening rim $b$ .prevents blows from fracturing the tip."

[2] It is apparent that the plaintiffs' device discloses three main elements: (1) A convex crown or disc; (2) an upturned rim; and (3) prongs in the same plane as the rim; and the plaintiffs vigorously insist that the same three elements are present in the defendant's device. Whether or not the "upturned rim"—the "strengthening rim"—is present in the defendant's device or not can only be determined by a close examination of the device itself, for if the upturned rim, which is an essential element of the plaintiff's device, is absent in the defendant's device, then infringement is avoided. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, at page 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Hall-Mammoth Incubator Co. v. Teabout, 215 Fed. 109, 131 C. C. A. 417; Underwood Typewriter Co. v. Royal Typewriter Co., 224 Fed. 477, at page 479, 140 C. C. A. 163; Evans et al. v. Hall Printing Press Co., 223 Fed. 539, at page 541, 139 C. C. A. 129.

[3] It is apparent from an examination of the two devices that extrinsic evidence is not needed to explain the terms of the art, or to apply the descriptions to the subject-matter, as one is able from mere comparison and study of the claim of the patent in suit to comprehend what the invention is as described in the patent, and whether the defendant's device contains all the elements of the claim. In such circumstances the question of infringement or noninfringement is one of law.

When the Circuit Court of Appeals was considering the Barry Case, supra, it is very apparent that Judge Coxe considered that the strengthening rim was .not only an important element in the claim, but a substantial part of the invention, as is evidenced by the opinion of the court, quoted supra. It is quite likely that the patent would never have issued, but for this element in the claim. The history of the case in the Patent Office, which is lengthy for such a small and simple device, justifies this conclusion. That the inventor regarded it as important is also disclosed in the file wrapper, for he said, inter alia, in discussing the matter:

"The strengthening rim of applicant's device is of great importance. It makes practical and useful a device which would be wholly impractical. Without this rim, it has been found by actual experience that a very large percentage of tips are fractured by even the comparatively light hammer blows required to fix them in place. The tendency of the tips without the rim is to flatten under the hammer blows, and the distortion thus produced causes the tips to break. With the rim, however, the tendency to distortion is resisted by the rim, and breakage is substantially prevented."

The device manufactured by the defendant and sold by the intervener has no strengthening rim, or upturned rim, as is disclosed by looking at it. No expert testimony is necessary to see that such is the fact. Their tip is, apparently, exactly like Figures 3 and 4, as shown in the file wrapper, which were canceled by the inventor on March 18, 1910, and the inventor himself says the lip $b$ (the upturned rim) is dispensed with, and that the prongs spring from the edge of the disc. This exactly describes the device sought to be enjoined as an infringement of a device with the rim. The prongs of the device manufactured by defendant and sold by intervener "spring from the edge of the disc," because there is no rim to it.

[4] The drawings of Alleyn's original application showed two different forms of furniture tips. Figures 1 and 2 (reproduced in the patent) show the form with the upturned rim, which is now made and sold by the plaintiffs as their "domes of silence." Figures 3 and 4 (canceled and not reproduced in the patent) showed a form without a rim. This form seems to me to be exactly like the defendant's "Kasterslides," in so far as the upturned strengthening rim or cylindrical lip has been omitted. Alleyn's original claims were drawn broadly enough to cover both forms. These broad forms were rejected in view of the prior art, and Alleyn canceled them and canceled Figures 3 and 4 of the drawings, together with the description thereof, which read:

"In the form shown in Figs. 3 and 4, the lip $b$ is dispensed with, the prongs $c$ springing from the edge of the disc $a$."

It seems clear that the structure shown in canceled Figures 3 and 4 of the original drawings is identical with defendant's "Kasterslides," in so far as the upturned or upstanding strengthening rim has been dispensed with, and plaintiffs cannot successfully claim that the patent, which issued after this form of device was eliminated from the application, covers a structure which was thus deliberately dedicated to the public. Railroad Co. v. Mellon, 104 U. S. 112, 119, 26 L. Ed. 639; White v. Dunbar, 119 U. S. 47, 51, 7 Sup. Ct. 72, 30 L. Ed. 303; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800.

So here it seems very clear that, as the patentee eliminated the form of tip shown in Figures 3 and 4, and claimed only the tip with the upturned rim, as shown in Figures 1 and 2, the part eliminated was abandoned to the public. The claim of the patent in suit defined Alleyn's invention, and it also gave notice to the public of what, in this art, was open to the public to manufacture and sell, without violating the rights of the patentee or his assignees.

But plaintiffs insist that the "Kasterslides" have a rim just the same, in effect, as the plaintiff's "domes of silence," and one of the reasons urged is because the Century Dictionary says that the words "rim" and "edge" are synonymous. In certain uses they are. Here they are not, as it is perfectly clear from an examination of the two different tips. If what the inventor says about a tip without a rim being "impractical," and that such a device is easily "fractured" by "the comparatively light blows of a hammer," then plaintiffs should have no cause to complain of defendant's device, and should have no fear of competition.

The more careful the examination of the two devices, the more we study the respective claims of the respective parties advanced in support of their respective contentions, the more convinced we must be that the defendant and intervener do not infringe. I therefore conclude that the defendant and the intervener do not use the "upturned rim" in their "Kasterslides." Omitting this element, it follows that there is no infringement by the defendant or the intervener.

The plaintiffs' motion for preliminary injunction is denied.

As the gravamen of the complaint against the defendant and intervener is infringement, without which the case falls, it necessarily follows, in view of the fact that nothing further can be adduced at final hearing respecting the infringement, that the intervener's motion to dismiss the bill should be granted. The patent has been held valid by the Circuit Court of Appeals in the Barry Case, supra. There is no attack made by the defendant or intervener as to its validity. The plaintiffs have their patent, and they can pursue those who do infringe; but they have no case against this defendant and intervener, nor in my view of the whole case, considering the record, the patent and the two devices can they make one. This ruling is in consonance with established practice.

Concluding as I do, it becomes unnecessary, at this time, to discuss the plaintiffs' motion to strike out the counterclaim. The intervener's motion for preliminary injunction is also denied without prejudice to renewal, if the practices, beyond what the patentee has a legal right to continue, are continued. Such renewal, however, to be upon notice with the affidavits already in this record, and any further supporting affidavits which show acts and practices beyond what is usually permissible, and which are known to counsel and definitely outlined in the decisions of the several Circuit Courts of Appeal.

There may be a decree in accordance with this opinion; and it is so ordered.