## GRISWOLD et al. v. BUCKLE PROOF SHINGLE CO., Inc.

District Court, E. D. New York. May 25, 1928.

No. 3150.

**1. Patents ☞66(1)—Suggestions found In prior patents relating to different art, which might have led to same result, do not constitute defense to infringement.**

Defense to patent infringement cannot be maintained by showing that there are found in sundry prior patents relating to different art suggestions which it can be said that any one can now see might have led, but did not, to what patentee has done.

**2. Patents ☞328—1,274,410, for flexible shingle, held valid and infringed.**

Griswold patent, No. 1,274,410, for flexible shingle, *held* valid and infringed.

In Equity. Suit by Albert Abbe Griswold and others against the Buckle Proof Shingle Company, Inc. Decree for plaintiffs.

Henry N. Paul, of Philadelphia, Pa., Julian S. Wooster, of New York City, and Henry N. Paul, Jr., of Philadelphia, Pa., for plaintiffs.

Dean, Fairbank, Obreight & Hirsch and C. W. Fairbank, all of New York City, for defendant.

CAMPBELL, District Judge. This is an action for the alleged infringement of patent No. 1,274,410, issued to Albert Abbe Griswold, the patentee, and John Francis Chevalier, assignee of one-half, for flexible shingle, dated August 6, 1918. The defenses are invalidity and noninfringement.

The problem that confronted the patentee was to improve the construction of a flexible shingle, so that the free end might be held down. This had been attempted, but without success, by cementing or blind-nailing.

The action is based solely on claim 1 of the patent in suit, which reads as follows:

"1. A flexible shingle having a flap bent under the shingle, sidewise extending members on the flap and adapted to go under the edges of adjacent shingles, in shingling a roof or the like, for the purpose as described."

The bent-under flap affords a point of attachment for the transverse member, without breaking the weather surface of the shingle, and also a sliding engagement, which keeps the shingle always flat, without buckling or tearing.

Among the other advantages which are incidental to the main inventive idea of the use of the cleat on the turned-up under flap, to hold down the free end of the shingle, while permitting a sliding, as distinguished from a too fixed, attachment of the end, are that it operates as a filling piece, to fill the triangular under space between the shingles, and keeps out water, and also as a spacing piece, making it easy for the roofer to lay the roof and form the desired geometrical pattern.

[1] It is true, as contended by the defendant, that the patent is not limited to any particular material, and it says that the shingles "may be constructed of paper, felt, and asphalt, or other flexible composition or fibrous material," and that prior art relied upon by the defendant cannot be discarded on the ground that it does not show shingles of the same material as that called for in the patent in suit; but it is also true that a defense cannot be maintained by showing that there are found, in sundry prior patents relating to a different art, that of nonflexible metal or tile-roofing devices, suggestions which it is said any one can now see might have led, but did not, to what this patentee has done. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277; Van Heusen Products v. Earl & Wilson (D. C.) 300 F. 922.

While defendant offered a number of patents in evidence to show the prior state of the art, it will be sufficient for us to refer to those on which the defendant's counsel laid emphasis in his oral argument.

Patent to Lewando, No. 140,928, for improvement in metallic roofings, dated July 15, 1873. This patent is for an improvement on patent No. 124,963, dated March 26, 1872.

There is no difference in the form of the sheet used to form the completed article in each of such patents, but in the earlier patent the lower corner of the sheet, when it is lifted after the sides have been turned down to form interlocking ribs, is not turned back, but is nailed down directly on the roof, and in that patent Lewando describes the soldering or the cementing of the joints between all of the adjacent and contiguous plates, after or during the process of laying the plates on the roof.

In nailing down a metal roof, the heads of the nails are ordinarily covered with solder; but there is no way of applying solder or cement that will form a permanent seal over a nail head in a flexible roof.

In the second Lewando patent, No. 140,928, the lower diamond-shaped corner of each plate or sheet is turned back, and the roofing is laid as described in the patent, as follows:

"The first row consists of half-plates A

A A, as shown in Fig. 1; these are nailed at the upper angles and the joints filled with cement; then the second course B B are locked onto the first and nailed in the same manner. The lower fold N p p is bent under and forms a complete lock joint at the lower angle."

There is no sidewise extending member on the flap, nor would one be of any importance, after the laying up of the plates on the roof, because, the edges, including the interlocked joint, being cemented or soldered, the roof becomes an integral sheet formed of plates soldered together.

The small arc of engagement of the sidewise extending portion of the bent-under flap with the adjacent shingles of Lewando's construction would be too yielding to produce any locking effect, if the shingles were made of flexible material.

The difference between Lewando and the patent in suit is a difference in material, in structure, and in the method of operation. This patent taught nothing to the patentee of the patent in suit.

Patent to Hyndman, No. 241,805, for metallic roof, dated May 24, 1881. The shingles of this patent, the patentee says, "may be constructed of galvanized iron, tin, or other sheet metal, and afterward painted," and the patentee also suggests that, if it is desired to ornament or stiffen the sheet metal, "the shingle may be formed with a rosette or groove or grooves, b, pressed into them."

The cleat is riveted in place by a rivet, which passes through the exposed surface of the plate. This is no flexible shingle, nor is there any bent-under flap, nor sidewise extending member on the flap.

Neither the Hyndman patent, No. 241,-805, nor the Adams patent, No. 326,374, appear to have ever been a success. The taking of the sidewise extending member from the Hyndman patent, and applying it in a different way to a different part of the different structure shown in the Adams patent, involved patentable invention. Smith v. Peck (C. C. A.) 262 F. 415, 417.

British patent to Drexler, No. 1,900, of A. D. 1890, for Improvements in Roof Coverings. This patent shows no flexible shingle, no flap bent under the shingle, and no sidewise extending member on the flap. The metal plate shown is provided with interlocking edges, with a turned over top, but the transverse member is not attached to the turned over top, nor on it, nor does it hold it down. Its ends are nailed down to the roof, and it does not go under the edges of the adjacent shingle in shingling the roof.

It would be impossible to invert the shingle and crosspiece of the Drexler patent and get the interlock at the bottom, instead of at the top, and there is no hint or suggestion in the Drexler patent that the shingle might be inverted and laid in any other way than shown, and therefore, even if it was possible to invert it, it is not an anticipation. Temco Electric Motor Co. v. Apco Mfg. Co. (Ga.) 48 S. Ct. 170, 72 L. Ed. ——, Jan. 3, 1928.

The result attained by the patent in suit was accomplished by abandoning the efforts of the prior art and turning to a different plan, which after the event appears to be very simple, but its simplicity certainly does not show lack of invention and merely the act of a skilled mechanic. The acceptance by the trade as satisfactory and the large use of the patent in suit shows that it solved a problem, the solution of which was eagerly awaited.

[2] None of the patents offered in evidence by the defendant anticipate the patent in suit, and it is valid. The claim in issue of the patent in suit reads directly on the structure of the defendant.

The defendant's structure is a flexible shingle having a flap bent under the shingle. The defendant's structure has sidewise extending members on the flap, and those members are adapted to go under the edges of adjacent shingles in shingling a roof or the like, for the purpose as described.

That purpose is described in the specification of the patent to be "to hold down the outer or what has heretofore been the free end of the shingle." The necessity for so doing is described in the specification as follows:

"In the construction of roofs and the like on which flexible shingles are used, it is necessary to hold down the free ends of the shingles, so as to prevent bending or curling up of the shingles and allowing rain, snow, or sleet to beat up under the shingles, thereby giving an unsightly appearance and causing the roof to leak."

In addition to holding down the lower end of the shingle, the function of the transverse member is to assist the roofer to properly locate the shingle, and the structure of the defendant functions in the same way to accomplish the same result. In the defendant's structure, as in the patent in suit, "the means for securing or holding down the outer or free end of the shingle forms a part of and is sold with the shingle, and the only operation required for securing the free or outer end of the shingle is the mere act of

placing the shingle in place for nailing the shingle to the roof."

This being done in one operation, there is a material saving in time, and a more perfect roof is constructed, at less cost than heretofore. In both the transverse member is attached to the flap, and not the weather portion of the shingle, thus avoiding the breaking of the weather portion of the shingle.

What the defendant does, and the patent to O'Dell, No. 16,832 (reissued), under which it operates, may well constitute an improvement, and be both useful and ornamental; but neither the making of the transversely extending member of more expensive metal, nor projecting one side of it around the edge or turn of the flap, affects the structure or method of operation of the infringing part, and the defendant does not escape infringement thereby.

The defendant's structure infringes the claim in issue of the patent in suit. A decree may be entered in favor of the plaintiffs, with an injunction, costs, and the usual order of reference.