## In re SYMONDS.
## Patent Appeal No. 2649.

Court of Customs and Patent Appeals.
March 31, 1931.

H. W. Kenway, of Boston, Mass., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of New York City, of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

In this appeal is involved the right of appellant to a patent on five claims numbered 3, 8, 9, 10, and 11, for "Improvements in Trawl Doors."

The claims being rejected by the Board of Appeals of the Patent Office, by an affirmance of the decision of the Examiner, appeal was taken to this court.

Two claims, numbered 6 and 7, seem to have been allowed by the Examiner, and are not before us.

The alleged invention relates to doors such as are used for keeping the mouths of trawl nets open, and the principal feature here involved appears to be that of a door "reversible in the sense that it can be readily adapted for use either as the right-hand or the left-hand door of a pair."

The claims read as follows:

"3. A trawl door comprising a body portion having provisions for attaching a net thereto at either of its ends, and towing connections located on the front face of the body portion, said connections being reversible with respect to the ends of the door."

"8. A trawl door comprising a body portion, a reinforcing structure secured to its back face, a towing bracket located on the front face of the body portion and connected through the latter to the reinforcing structure, said towing bracket being reversible with respect to the ends of the door, and provisions for attaching a net to the door at either of its ends.

"9. A trawl door comprising a body portion, a reinforcing structure secured to its back face and extending to each of the four corners thereof, a towing bracket located on the front face of the body portion and connected through the latter to the reinforcing structure, said towing bracket being reversible with respect to the ends of the door, and provisions for attaching the net to the reinforcing structure at either of its ends.

"10. A trawl door comprising a body portion, a reinforcing structure secured to its back face and including longitudinally-extending members located between the center line of the body portion and its upper and lower edges, respectively, and diagonal members diverging towards adjacent corners of the body portion, means for attaching a net to the diagonal members, and towing connections located on the front face of the body portion and attached directly to the longitudinal members of the reinforcing structure by connections passing through the body portion.

"11. A trawl door provided with a shoe consisting of a metal plate attached at its upper edge to the lower edge of the door and having a cross-sectional curvature such that the greater portion of the shoe is located behind the rear face of the door, with its convex side presented to the direction of the forward movement of the door."

Three references are cited from the prior art: Halliwell et al., British, 15501, December 28, 1895; Fairweather et al., British, 2455, August 14, 1913; Waldie et al., British, 174250, January 26, 1922.

It is the contention of appellant that he is the first to devise and construct a trawl net door which may be used upon either the right or the left of the mouth of the net, with the necessary reinforcing structure properly arranged and attached to the door in a manner that enables the towing cable to be fastened to the bracket or brackets in whichever position (left or right) the door may be placed; that by so doing he has developed a device both useful and patentably novel; that, until the creation of his reversible doors, trawl doors have always been made in pairs, one for the left and one for the right; that in operation, the net being towed in such a manner as that it drags upon the sea bottom, there is rough usage which frequently causes one door of a pair to be torn away and lost; that this necessitates there being carried upon trawl-using fishing vessels, as spares, a number of extra doors to replace any that may be lost; that they have heretofore had to be carried in pairs, but that now, by reason of his invention, it is necessary to carry, as spares, only half the number formerly essential; and that the arrangement of the shoe as provided in claim 11 "adapts the door to tip forward and ride over obstructions on the sea bottom"—all these things to the manifest advantage of the art.

The allowed claims are set out in appellant's brief, and, from an examination of these, it does not appear that any patent has been granted upon the reversible feature of his doors, or the arrangement of the elements essential to render such reversal practical. The tribunals of the Patent Office held that

.. 
974

the patent to Waldie "shows a trawl door similar to appellant's but no extra holes were provided nor is any suggestion found in the specification that the cable connection could be shifted to the other end of the door to permit it to be employed on the opposite side of the net. There is no question but that this simple expedient is advantageous. We agree with the examiner, however, that it is not a patentable difference."

This same patent shows longitudinal reinforcing ribs, but these are upon the face of the door rather than upon the back, as called for by appellant's claim 10. Diagonal ribs, also called for by claim 10, appear to be shown by Halliwell, but these also are on the front rather than the back.

The tribunals of the Patent Office felt that the peculiar, or particular, structure of the runners disclosed in claim 11 does not constitute invention, or, as the Board expresses it, requires nothing "more than mechanical skill."

There can be no doubt, we think, about appellant having conceived and devised an arrangement of parts which has contributed a device of great value to the art of fishing. Its commercial success we understand to be virtually conceded.

It is true that these elements alone do not render the claims patentable. Invention must be present.

The Solicitor for the Patent Office cites us to the case of In re Iwan, 17 App. D. C. 566, wherein it was held that making a handle for a hay knife reversible on the head of the shank to which the blade is attached did not involve invention, the court saying:

"The claims for which those patents [the references] were granted are substantially, though not in every particular, the same in mechanical construction, as the device described in claims 1, 2, 3 and 5 of this case. It is true, there is some difference in form, and, in the two patents referred to, it is not stated that the handle attachment is reversible. But to make the handle reversible on the head of the shank to which the blade of the knife is attached, it is only necessary to, * * * and this does not require anything more than ordinary mechanical ingenuity. * * *

"There is nothing, therefore, patentable in the device of readjustment and reversible attachment of the handle on the shank of the knife, so as to affect the manner of its operation as described by the appellant."

The Solicitor's brief then continues:

"The only change in the Waldie et al. device necessary to make it completely anticipate claims 3 and 8 is to drill a few holes on the opposite side of the center line. The towing and the net attaching connections then became reversible with respect to the ends of the door because these connections are merely made by bolts through holes in the appropriate places."

This may be true, but the fact remains that appellant did drill the holes at the proper places and thereby made the doors reversible, thus contributing a new arrangement which created a valuable device for use in a very ancient art.

It is quite simple, it is true, but many problems are simple after they have been solved.

In Murphy Wall Bed Co. et al. v. Rip Van Winkle Wall Bed Co. (D. C.) 295 F. 748, 753, the validity of a patent to Murphy for a disappearing bed was upheld, the court saying:

"His *lateral shift* was the simple improvement which revolutionized the art." (Italics ours.)

In H. D. Smith & Co. v. Peck, Stow & Wilcox Co., 262 F. 415, 416, 417, the Circuit Court of Appeals of the Second Circuit approved a patent for a screwdriver on account of "a particular structure and a particular shape" which "provided a firm grasp, while facilitating a nice control by pressure of the finger and thumb upon the shank of the tool." In that case the court said:

"Whether the structure involves invention is a question of fact, and the determining factor is not whether the achievement is difficult or easy, but whether it has, in point of fact, given the world something of real value, that it did not have—a benefit conferred upon mankind. O'Rourke Engineering Const. Co. v. McMullen et al., 160 F. 933, 88 C. C. A. 115."

A quotation from the O'Rourke Case is:

"Has the patentee added anything of value to the sum of human knowledge, has he made the world's work easier, cheaper and safer, would the return to the prior art be a retrogression? When the court has answered this question, or these questions, in the affirmative, the effort should be to give the inventor the just reward of the contribution he has made."

It must, of course, be understood, in construing the language last quoted, that inven-

tion must be present. We understand the court to have laid down the quoted doctrine as a partial test of whether invention was present.

In Kurtz et al. v. Belle Hat Lining Co., Inc. (C. C. A.) 280 F. 277, 282, a patent for a hat lining "in which," as stated in the syllabus, "an uncovered cord is sewed between the crown piece and the side piece to produce an ornate seam," was upheld, "in view of its commercial success." The court there said:

"If we viewed this hat lining, or any hat lining, in the light of our own experience, it would appear trivial and unworthy the dignity of patent protection; but, looking at it through the evidence and (we hope) with the eyes of the hat lining trade, this patent represents a large and successful business. It is in the minds of all those who deal in hat linings, of the utmost importance. No one ever made a lining of such simplicity, cheapness, and general adaptability as has Kurtz, and he has done it by mechanical means of winning simplicity. * * * "

In General Electric v. Sangamo, 174 F. 246, 251, 98 C. C. A. 154, 159, the court said:

"Invention, in the nature of improvements, is the double mental act of discerning, in existing machines or processes or articles, some deficiency, and pointing out the means of overcoming it."

It seems to us that what appellant here has done to aid in the art of trawl fishing meets the tests laid down in the several cases from which we have quoted, supra. Expressions in other cases might be cited, such as Cincinnati Milling Machine Co. v. Oakley Machine Tool Co. (D. C.) 268 F. 257, Matrix Contrast Corporation et al. v. Kellar (D. C.) 34 F.(2d) 510, and cases therein referred to; also Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

The features in claim 9, not shown in claims 3 and 8, are the arrangement of the towing brackets in reversible positions with respect to the ends of the doors, and also the arrangement of reinforcing means on the back face of the door, rather than the front, and connecting said reinforcing means with the towing bracket which latter is on the front face. Claim 10, as will be observed, also relates to reinforcing means with diagonal members, on the back rather than the front face of the door. All these arrangements seem to be necessary or at least important features in accomplishing the end sought—that is, the creation of the reversible door.

Claim 11 relates solely to the shoe or runner with which the lower edge of the door is equipped. We agree with the tribunals of the Patent Office that this feature is more one of mechanical skill than of invention. The other features we think involve invention.

The decision of the Board of Appeals is modified, being reversed as to claims 3, 8, 9, and 10 and affirmed as to claim 11.